IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JARVIS DUNK McDAVID, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:17-cv-01843-L (BT) |
| | § | |
| J. WILSON, et al., | § | |
| Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Jarvis Dunk McDavid, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation, pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the District Court should dismiss McDavid's petition with prejudice.

I.

In March of 2015, a jury in Navarro County, Texas, convicted McDavid of aggravated assault with a deadly weapon.[1] Specifically, McDavid was convicted of assaulting his wife, LaToya McDavid, who complained that McDavid had pulled her hair, held her down, struck her twice in the face with an open hand, and threatened her while holding a kitchen knife to her throat. *See McDavid v. State*, No. 10-15-00112-CR, 2015 WL 7873639, at *1 (Tex. App. – Waco, Dec. 3, 2015).

---

[1] Navarro County is within the jurisdiction of this Court. *See* 28 U.S.C. §§ 128 (a)(1), 2241(d), 2254(a).

The trial court sentenced McDavid to fifteen years' imprisonment. The Waco Court of Appeals affirmed the trial court's judgment, *see id.*, and the Texas Court of Criminal Appeals (CCA) refused McDavid's petition for discretionary review. *See McDavid v. State*, PD-1666-15 (Tex. Crim. App., Apr. 13, 2016). McDavid then filed a state application for writ of habeas corpus, which the CCA denied on the findings of the trial court without a hearing.

On July 5, 2017, McDavid filed his § 2254 petition (ECF No. 1) in this Court.[2] Shortly thereafter, the Court received McDavid's motion seeking a "Stay and Abeyance" to allow him to exhaust his state court remedies, which the Court granted and then administratively closed the case. The Court reopened the case on McDavid's motion on August 13, 2018.

In his petition, McDavid claims

1.   The trial court erred by:

   a.   admitting testimonial evidence without an opportunity for cross-examination in violation of *Crawford v. Washington*, 541 U.S. 36 (2004); and

   b.   allowing the State to impeach and attack the credibility of its own witnesses through admission of extraneous-offense evidence.

2.   The prosecutor engaged in prosecutorial misconduct by:

   a.   making misstatements of material fact; and

---

[2] A prisoner's *pro se* pleading is deemed filed on the date that it was deposited in the prison mail system. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Here, McDavid signed and dated his petition on July 5, 2017. Pet. 11 (ECF No. 1). The Court assumes McDavid gave it to prison officials for mailing on the same date.

     b.     "vouching" for the credibility for witnesses that did not testify in court.

   3.     His attorney provided ineffective assistance of counsel by:

     a.     waiving an objection to prosecutorial misconduct; and

     b.     failing to conduct an adequate pretrial investigation.

*See* Pet. As explained below, these grounds are meritless, and the Court should dismiss the petition with prejudice.

## II.

## A.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to

that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

B.

1.   <u>The trial court did not violate *Crawford* by allowing the State to introduce testimonial evidence</u>.

In his first claim, McDavid argues that the trial court violated *Crawford v. Washington*, 541 U.S. 36 (2004), when it admitted testimonial evidence without an opportunity for cross-examination.[3] Pet. 6 (ECF No. 1); Mem. 6-13 (ECF No. 3); Reply 1, 5-7 (ECF No. 26). Specifically, McDavid contends that the trial court allowed the prosecutor to use testimonial statements from a 911 call at trial, but the caller did not testify. Pet. 6 (ECF No. 1); Mem. 6-13 (ECF No. 3). The state appellate court addressed this claim on direct appeal. *McDavid*, 2015 WL 7873639, at **1-2. The following facts regarding this claim are taken from the state appellate decision:

---

[3] In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54; *see also Davis v. Washington*, 547 U.S. 813, 821 (2006).

Outside the presence of the jury, [McDavid] objected to the admission of the 911 call that was made by LaToya's mother after she received a text message from LaToya about the assault. Amy Zapata, the 911 dispatcher from Corsicana Police Department, testified that: "Upon receiving the call it was a female, advised she received a daughter—a text from her daughter that, that she was being assaulted. And she provided me with the address. And at that time I dispatched the police officers to the location." Later, Zapata noted the following: "Yes, well, it came in third party, so I got as much information as I could. Based upon the information from the caller I determined that it's possible that the assault was taking place and so we dispatched the police."

When the State offered the recording of the 911 call for inclusion in the evidence, [McDavid] objected, arguing that, among other things, he was prevented from cross-examining the caller, LaToya's mother, which constituted a violation of the Confrontation Clause.[4] The state responded that the recording was offered "for the fact that a call was placed to 911," not "as evidence that the defendant was assaulting his wife." The State further argued:

That the nature of that call was that there was of a possible assault occurring and the effect on that was that dispatch sent police officers to the address given by the caller.

. . . .

She's not giving testimony against this defendant. She was placing a call so that an investigation would occur. So that if there was a situation going on the appropriate law enforcement agency could respond.

---

[4] The prosecutor noted at the hearing on [McDavid's] objection to the admission of the 911 call that he had previously issued a subpoena for LaToya's mother, but he believed she was "willingly dodging service." The prosecutor sought leave of the court to present a writ of attachment to have LaToya's mother arrested and brought to court to testify. The record reflects that LaToya's mother did not testify at trial.

> At the conclusion of the arguments, the trial court overruled [McDavid's] objection and granted [McDavid] a running objection with regard to the 911 call.

*McDavid*, 2015 WL 7873639, at *1.

"[A] state defendant has no constitutional right to an errorless trial." *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984) (citing *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983)). Rather, on federal habeas review, a court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine the state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000). When a petitioner alleges a trial court error, he is entitled to federal habeas relief only if the error had a substantial and injurious effect on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *see also Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). A petitioner must show that "there is more than a mere reasonable probably that [the court's error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

McDavid argues that the 911 call was hearsay evidence admitted in violation of the Confrontation Clause. Mem. 9-13 (ECF No. 3). "What is or is not hearsay

evidence in a state court trial is governed by state law." *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). A federal habeas court "does not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (citing *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991)). A federal court "will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a 'denial of fundamental fairness' under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (internal citations omitted); *see also Little*, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.") (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986)).

McDavid contends that there was no "immediate danger," and the emergency the 911 caller was calling about had passed. Mem. 11 (ECF No. 3). Similarly, he claims that there was "no indication the emergency was still ongoing." *Id.* McDavid concludes, "[t]his fails to establish the kind of ongoing and immediate threat necessary for the 911 caller to be exempt from confrontation." *Id.* However, the Waco Court of Appeals noted that "statements to the police—whether spontaneous or in response to preliminary questions—when police are called to a crime scene shortly after a crime are not testimonial because the interaction was

not initiated by police, nor was the interaction formal or structured." *McDavid*, 2015 WL 7873639, at *3 (quoting *Ruth v. State*, 167 S.W.3d 560, 569 (Tex. App.— Houston [14th Dist.] 2005). Also, the Waco Court of Appeals noted that statements made during a 911 call are not given in response to structured police questioning or an eye to future legal proceedings, as they are initiated by a victim or witness to get police assistance. *Id.* (citing *Ruth*, 167 S.W.3d at 569). In pertinent part, the Waco Court of Appeals held:

> In this case, LaToya's mother called 911 to report that [McDavid] was assaulting her daughter and to summon emergency help. In doing so, LaToya's mother provided [the 911 dispatcher] with LaToya's address so that police could be dispatched to the house. [The 911 dispatcher] also testified that she determined from the call that an assault was in progress and that it was necessary to dispatch police to the house. The statements were initiated by LaToya's mother and were not given in response to structured police questioning or with an eye to future legal proceedings. Therefore, based on our review of the record, we conclude that the statements LaToya's mother made to [the dispatcher] constituted a non-testimonial call for help. And because the statements on the 911 call were not testimonial, we cannot say that [McDavid's] right of confrontation was implicated. Additionally, we cannot conclude that the trial court abused its discretion in admitting the 911 call into evidence.

*Id.* (internal citations omitted).

The Waco Court of Appeals did not err in finding that the 911 call did not violate McDavid's right to confront his accusers because it was a non-testimonial call for help. Moreover, McDavid has failed to demonstrate that the findings of

Waco Court of Appeals were an unreasonable application of the Supreme Court's holding in *Crawford*. Therefore, McDavid's claim should be denied.

2.      The prosecutor did not make misrepresentations.

McDavid also argues that the prosecutor made "misstatements of material fact" in his opening statement, in his direct examination of Officer Lytle, and in his closing argument. Pet. 6 (ECF No. 1); Mem. 7, 13-14 (ECF No. 3); Reply 2 (ECF No. 26). McDavid further argues that these "misstatements of material fact" were used to secure his conviction, and this violated due process of law and his right to a fair trial. Mem. 13 (ECF No. 3). Finally, McDavid claims that LaToya did not admit she called the police. *Id.* 14.

McDavid claims the prosecutor made the following improper statements during his opening argument: "You are going to hear that [LaToya] tried to leave the apartment and he wouldn't let her. You're going to hear that she wanted to call 911 and he told her if you do I will kill you." *Id.* 13-14 (citing Reporter's R. Vol. III at 26); "You will hear that she wasn't there when he was arrested." *Id.* 14 (citing Reporter's R. Vol. III at 58-59). McDavid also refers to the following argument by the prosecutor during closing arguments:

> And somehow she was able to get, get a call out to her, he allowed her during this time to make a phone call to them other and, or, I'm sorry, the mother called and he had the knife up to her throat and was basically telling her if she, you know, she made any cry for help or anything to, basically that if, if anything would happen, I mean, if she would have said something that she was, again, you known, she was to cry for help she was going to get killed.

*Id.* (citing Reporter's R. Vol. III at 59). And he contends that the prosecutor made the following improper statements during closing arguments: "Officer, he held the knife up to my throat while I wanted to, while I was talking to my mom about picking up the child, little Jasmine." *Id.* (citing Reporter's R. Vol. IV at 16). "But then she had to admit to you that this isn't the first time she had to call law enforcement because of the domestic violence." *Id.* (citing Reporter's R. Vol. IV at 48) (referring to Trial Ct. Clerk's R. at 59-61 (police report) and Reporter's R. Vol. III at 154 (reading of affidavit of non-prosecution)). McDavid also refers to a passage during which the prosecutor and Officer Lytle review the body camera video (Coban video). *Id.* (citing Reporter's R. Vol. III at 76-91).

When assessing whether a prosecutor's arguments are improper, the issue is whether the arguments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Bingham v. Director*, 2021 WL 2211864, at *2 (N.D. Tex. Apr. 15, 2021). Prosecutorial misconduct must rise to the level of making the trial "unfair" to constitute a "constitutional error." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citing *Darden v. Wainwright*, 477 U.S. 168, 183 n.15 (1986)). "A trial is fundamentally unfair if 'there is reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted)). In Texas, where McDavid's trial took place, an opening statement serves to inform the jury about

the nature of the accusation and to provide a summary of the evidence the State intends to offer. *McGowen v. State*, 25 S.W.3d 741, 747 (Tex. App. – Houston [14th Dist.] 2000). A closing argument in Texas properly includes: (1) a summary of the evidence, (2) any reasonable deductions from the evidence, (3) a response to opposing counsel's argument, and (4) a plea for law enforcement. *Dickson v. State*, 642 S.W.2d 185, 187 (Tex. Crim. App. 1982).

McDavid does not explain specifically why the prosecutor's statements during opening and closing arguments were improper. *See* Pet. 6 (ECF No. 1); Mem. 13-14 (ECF No. 3). Under Rule 2(c) of the Rules Governing § 2254 Cases, a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Habeas Corpus Rule 2(c). Conclusory and speculative allegations are insufficient to entitle a petitioner to relief. *West v. Johnson*, 92 F.3d 1385, 1398-99 (5th Cir. 1996); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (noting that where a habeas petitioner fails to brief an argument adequately, it is considered waived). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that

in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

McDavid apparently contends that LaToya failed to corroborate her own contemporaneous statements on the video. LaToya testified at trial that she could not remember anything. Reporter's R. Vol. III at 147-83; *see also* State's Trial Ex. 13 (affidavit of non-prosecution); State's Trial Ex. 14 (accompanying letter). LaToya also testified that she could not remember sending the text message to her mother. Reporter's R. Vol. III at 162-63. However, the record suggests that the police encounter with LaToya was captured on video, and when the police arrived, McDavid ran out the back door. *Id*. 78, 89. LaToya appears on the video saying that McDavid held "a knife against her, threatened a knife against her neck and that somebody was going to die." *Id*. 82. She also stated that she did not "feel safe if we don't get him." *Id*. LaToya pointed to the bruises on her face. *Id*.; State's Trial Ex. 6-7, 10 (photos of the victim), 8 (photo of the knife), 9 (photo of the victim's hair). She also indicated that McDavid held a knife to her throat. Reporter's R. Vol. III at 86-87. Officer Lytle recounted the statements LaToya made to him while he was investigating the incident. *Id*. 58-59. LaToya claimed she deleted the text she sent to her mother that had prompted her mother call the police. *Id*. 59.

The prosecutor's statements made during opening and closing arguments either came from evidence in the record, or they were drawn from reasonable deductions from the evidence of record. The trial record contains an excerpt from Officer Lytle's response to LaToya's mother's call. Officer Lytle turned on his audio

and video recording equipment, referred to as the "Coban System," and he recorded his encounter with LaToya. *Id.* 50, 58-59. As noted, McDavid does not address specifically why LaToya's testimony was improper, but presumably, his argument is that the video constituted the admission of impermissible hearsay. At trial, however, the State demonstrated that LaToya's statements were made during a "frantic" or "agitated" situation, so the prosecutor did not err by asking Officer Lytle to recount his interactions with LaToya at trial. *See* Tex. R. Evid. 803(2) (A "statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused by the event or condition" falls under the excited utterance exception to the hearsay rule "regardless of whether the declarant is available"); *see also King v. State*, 953 S.W.2d 266, 268-69 (Tex. Crim. App. 1997). Consequently, this claim lacks merit and should be denied.

3.  McDavid's attorney did not provide ineffective assistance of counsel by failing to object to the alleged prosecutorial misconduct.

McDavid argues that his attorney provided ineffective assistance of counsel by "waiv[ing]" an objection to improper arguments by the prosecutor during closing argument. Pet. 7 (ECF No. 1); *see also* Mem. 14-18 (ECF No. 3); Reply 2, 7-9 (ECF No. 26). McDavid claims that his attorney's failure to object to the prosecutor's arguments contributed to his conviction and punishment, and for this reason, his conviction should be reversed, and the case remanded for further proceedings. Mem. 18 (ECF No. 3).

McDavid refers to the following arguments: "Ladies and gentleman of the jury, baby Jasmine is one of the reasons you should care. Because the next time we're here, ladies and gentleman of the jury, if you find the defendant not guilty, we'll have a murder on our hands and baby Jasmine won't have parents." *Id.* 14-15 (citing Reporter's R. Vol. IV at 16-17). "That's the kind of man who has no compunction holding this deadly weapon to his wife's throat. We're just so lucky it's not a murder." *Id.* 15 (citing Reporter's R. Vol. IV at 19). "And then you got a whole bunch of stuff about lesser included offense of assault. What kind of message does that send? I think, ladies and gentleman of the jury, you just ignore that. Everything after Page 5, ignore it." *Id.* at 22 (citing Reporter's R. Vol. IV at 22). "So I ask you just to pass all through that . . . We need to protect baby Jasmine, make sure she still has a mother after this. We don't want to have another 12 individuals deciding a murder case." *Id.* at 23 (citing Reporter's R. Vol. IV at 23). Finally, McDavid refers to this argument:

> You have been offered a lesser included offense of simple assault, a Class A Misdemeanor. I would submit to you that's the easy way out. It's easy just to go, okay, we know he hit her, let's move on. But you need to hold him accountable, not for what's easy, but for what he chose to do. We're free to make choices. We are not free from the consequences of those choices. You need to hold him accountable for what he did. You need to tell him that the citizens of this County don't tolerate that behavior. You need to go back there and you need to find him guilty of aggravated assault with a deadly weapon for holding that knife to her throat. Thank you.

*Id.* (citing Reporter's R. Vol. IV at 50).

The Sixth Amendment guarantees a criminal defendant the right to reasonably effective assistance of counsel. U.S. Const. amend. VI; *see also Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980). To succeed on a claim of ineffective assistance of counsel, a petitioner must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 689. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Murray v. Maggio*, 736 F.2d 279, 281-82 (5th Cir. 1984); *see also Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

Additionally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address the question of counsel's performance. *Id.* at 697. Merely presenting "conclusory allegations" of deficient performance or prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "[T]he test for federal habeas purposes is not whether [an inmate] made that showing [required by *Strickland*]. Instead, the test is

whether the state court's decision—that [the inmate] did not make the *Strickland*-showing-was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003); *Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir. 2011) (citing *Schaetzle*, 343 F.3d at 444); *see also* 28 U.S.C. § 2254(d)(1).

On September 13, 2017, the CCA remanded the case to the state habeas trial court to address this issue. CCA Remand Evid. Hrg. Sept. 13, 2017 at **1-3. McDavid's trial attorney, David Hudson, provided an affidavit in which he stated that he did not find the prosecutor's arguments objectionable. Hudson explained:

> It was my understanding that community expectations as a plea of law enforcement is a proper area for jury argument. In addition it was my understanding that it can include arguing the relationship between the jury's verdict and deterrence of a specific type of crime or crime in general. It can also include the impact of the verdict on the community.

> . . .

> During the trial there was testimony regarding a child, Jasmine, residing and being present at the location of the alleged incident/crime scene. The testimony from the victim regarding the child, Jasmine, placed the child within the record and a potential subject for closing argument.

> In addition, there was also evidence/testimony in trial of the victim stating that the defendant held a knife to her neck. It was my belief that it was not improper for counsel to comment on a knife being held to the throat of a victim being that evidence of that statement by the victim was presented during trial.

16

. . .

> The lesser included offenses were an option for the jury to consider and not mandatory if the jury unanimously believed beyond a reasonable doubt that Mr. McDavid was guilty of the offense charged, Aggravated Assault with a Deadly Weapon. The court further instructed the jurors that what either counsel states is not to be considered as evidence. The court also instructed the members of the jury that the information included in the jury charge is what they are bound by not what the attorneys say. It was not my belief that the comments by state counsel was improper and was considered to be a plea for law enforcement to the jury that included arguing the relationship between the jury's verdict and deterrence of a specific type of crime of crime in general.

1st Supp. State Hab. Ct. R. -01 at 11-12.

McDavid has failed to demonstrate that his attorney provided deficient performance. As set forth in his affidavit, Hudson believed that the prosecutor's arguments were not objectionable, and this was a reasonable conclusion. The decision not to make objections to opposing counsel's jury argument is a matter of trial strategy. *See Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992) ("A decision not to object to a closing argument is a matter of trial strategy."); *see also Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). "Since an objection may tend to emphasize a particular remark to an otherwise oblivious jury, the effect of objection may be more prejudicial than the original remarks." *Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970); *see also Charles v. Thaler*, 629 F.3d 494, 502 (5th Cir. 2011) (explaining that there is "no constitutional rule that counsel must make, or not overlook, every possible objection to unfavorable testimony").

McDavid has failed to overcome the strong presumption in favor of finding that trial counsel rendered adequate assistance and that his actions were sound trial strategy. *See Strickland*, 466 U.S. at 689 (A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citation omitted); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]") (quoting *Strickland*, 466 U.S. at 689); *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). The prosecutor's statements were a plea for law enforcement in a case where the victim did not want to prosecute the crime and there was a child whose life was potentially in danger.

McDavid has also failed to demonstrate that he was prejudiced. Prejudice under *Strickland* requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the trial would have been different. *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) ("To demonstrate prejudice under *Strickland,* [a petitioner] must show that counsel's performance was 'so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'") (quoting *Strickland*, 466 U.S. at 687). A "reasonable probability" is "a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Law enforcement responded to a phone call that an assault was being committed, and upon arrival, they learned that an assault had occurred. McDavid ran out the back door when police arrived on the scene. McDavid has not demonstrated that his attorney's failure to object to the prosecutor's closing arguments ultimately impacted the jury's verdict.

For each of these reasons, McDavid's claim should be denied.

4.   McDavid's attorney did not provide ineffective assistance of counsel by failing to conduct a pretrial investigation.

McDavid argues that his attorney provided ineffective assistance of counsel by failing to conduct an adequate pretrial investigation. Pet. 7 (ECF No. 1); Mem. 18-19 (ECF No. 3); Reply 2, 9-13 (ECF No. 26). For example, McDavid contends that his attorney failed to: contact an alibi witness, contact a neighbor who was in the Coban video who was a witness, and engage in reasonable preparation for trial. Pet. 7 (ECF No. 1); Mem. 18 (Mem. 3). McDavid also complains about "Defendant's Election and Omnibus Pretrial motions #8, 9, 11, 13, 18, 19." Pet. 7 (ECF No. 1); Mem. 18 (Mem. 3). Finally, McDavid argues that his attorney waited until the day of trial to ask for redactions in the 911 tape. Pet. 7 (ECF No. 1).

On April 18, 2018, the CCA remanded the case back to the state habeas trial court a second time to address this issue. Remand Evid. Hrg. Apr. 18, 2018 at ** 1-2. McDavid's attorney, Hudson, provided an additional affidavit in which he stated that McDavid did not provide him with the name of any alibi witnesses. 2nd

19

Supp. State Hab. Tr. Ct. -01 at 14-15. Hudson stated that he contacted McDavid's father, but his father refused to attend McDavid's trial. *Id.* 13. McDavid claimed that he had been fishing at the time of the assault, but he did not provide any evidence to support this claim. *Id.* 15. Also, McDavid was unwilling to take the stand at his trial to provide an alibi defense. *Id.*

A claim that an attorney provided ineffective assistance of counsel because he did not adequately conduct a pretrial investigation is addressed under the standards set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *Bryant v. Scott*, 28 F.3d 1411, 1414 (5th Cir. 1994). A trial attorney must conduct a reasonable amount of pre-trial investigation. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (citing *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985)); *see also Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). "[W]hen alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses and 'ascertain whether their testimony would aid the defense.'" *Bryant*, 28 F.3d at 1415 (quoting *Grooms v. Solem*, 923 F.2d 88, 90 (8th Cir. 1991)); *see also Towns v. Smith*, 395 F.3d 251, 258-60 (6th Cir. 2005) (recognizing that counsel's failure to conduct a reasonable investigation into a "known and potentially important alibi witness" was ineffective assistance where an investigation would have resulted in a reasonable probability of the defendant's acquittal). To demonstrate prejudice due to "a failure to investigate on the part of his counsel [a petitioner] must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Adekeye v.*

*Davis*, 938 F.3d 678, 683 (5th Cir. 2019) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

Each part of McDavid's multi-part claim lacks merit. His attorney, Hudson, represented that he was not provided the name of an alibi witness, and his attorney cannot be deemed ineffective for failing to contact a witness he was not made aware of. With respect to his claim regarding the punishment election, McDavid notably does not argue that Hudson committed any specific error. Pet. 7 (ECF No. 1); Mem. 18-19 (ECF No. 3). Therefore, McDavid is not entitled to § 2254 relief on this conclusory claim. *See West*, 92 F.3d at 1398-99; *see also Perillo*, 79 F.3d at 444. In addition, the record shows that although Hudson did not file a punishment notice, he told the judge that McDavid would be going before the court for punishment. Reporter's R. Vol. II at 5. On March 25, 2015, the judge held a punishment hearing and assessed punishment. Reporter's R. Vol. V at 3-15. It is not clear whether McDavid is suggesting that a jury would have given him a lighter sentence than the judge imposed, but for him to succeed on his ineffective assistance of counsel argument, he would have to demonstrate that but for Hudson's ineffective assistance, the sentence imposed would have been "significantly less harsh." *See United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) (per curiam) ("In the context of sentencing, prejudice means that but for his counsel's error, his sentence would have been significantly less harsh."). McDavid has not shown that if he had been sentenced by a jury, his sentence would have been "significantly less harsh." It is unclear what McDavid is referring

to when he says that Hudson failed to file an Omnibus Pretrial motion. Pet 7 (ECF No. 1). McDavid fails to explain how the Omnibus Pretrial motion was erroneous, and there is no error apparent from the record. Pet. 7 (ECF No. 1); Mem. 18-19 (ECF No. 3). The record reflects that Hudson filed such a motion. Tr. Ct. Clerk's R. at 23-29. And as for the redactions to the 911 tape, the record shows that there was discussion about a statement on the tape to which Hudson objected. Reporter's R. Vol. III at 82-83. The trial court then ruled in favor of McDavid and granted a motion directing the jury to disregard the statement. *Id.* 83; *see also Zafiro v. United States*, 506 U.S. 534, 540–41 (1993) (explaining jurors are presumed to follow their instructions).

For these reasons, McDavid's claim should be denied.

5.   <u>The prosecutor did not vouch for a witness</u>.

McDavid argues that the prosecutor "vouch[ed]" for the credibility of witnesses who did not testify at trial. Pet. 8 (ECF No. 1); *see also* Mem. (ECF No. 3) 7, 20; Reply 2 (ECF No. 26). He further argues that the prosecutor made statements regarding credibility of witnesses and testimony that was outside the record. Pet. 8 (ECF No. 1); Mem. 7, 20 (ECF No. 3). McDavid concludes that the prosecutor's arguments violated his Fifth Amendment right to due process of law. Mem. 20 (ECF No. 3).

In support of his argument, McDavid refers to the following record cites: Reporter's R. Vol. IV at 16, 18-19, 23, 45. Pet. 8 (ECF No. 1). On page 16, the prosecutor attacked LaToya for telling a "fantastical tale." Reporter's R. Vol. IV at

16. On page eighteen and nineteen, the prosecutor told the jury that it was the "judge of the credibility of Officer Lytle," and he then asked the jury to consider why Officer Lytle might say that he saw "stab marks on the bed" when that was untruthful. *Id.* 18-19. On page twenty, the prosecutor asked the jury to determine if LaToya was more credible at the time of the assault or at trial. *Id.* 20. Also on page twenty, the prosecutor compared Officer Lytle's credibility with LaToya's. *Id.* It t is not clear what McDavid is objecting to on page 23, but apparently he takes issue with the statements concerning LaToya's mother, Lorna Franklin. *Id.* 23. Finally, McDavid fails to make clear what he is objecting to on page 45. *Id.* 45.

When a prosecutor vouches for the credibility of witnesses, it improperly suggests to the jury that: (1) evidence not presented at trial but known to the prosecutor supports the charge against the defendant so that the conviction is not based only on evidence presented to the jury; and (2) the prosecutor's opinion, which carries the imprimatur of the State, should be trusted over the jury's own view of the evidence. *United States v. Young*, 470 U.S. 1, 18-19 (1985). Generally, it is improper for a prosecutor to make a personal assertion that vouches for the credibility of a witness. *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008); *see also United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995). A prosecutor may not vouch for the credibility of a witness in a way that "might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt." *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010) (quoting *United*

*States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977) ). While a prosecutor may not vouch for the state's witnesses, he may legitimately argue that a fair inference from the facts presented is that a witness has no reason to lie. *McCann*, 613 F.3d at 495; *see also Washington*, 44 F.3d at 1278; *United States v. Bright*, 630 F.2d 804, 824 (5th Cir. 1980).

The prosecutor's statements did not convey some unique personal knowledge about the credibility of any of the witnesses. Rather, the prosecutor merely recounted the evidence admitted during the trial. For example, regarding the claim that LaToya's story was "fantastical," the record shows that she filed an affidavit of non-prosecution and then filed a letter explaining that she wanted the charges dropped on the basis that her statements to the police were affected by alcohol. Reporter's R. Vol. III at 155; State's Trial Ex. 13 (an affidavit of non-prosecution); State's Trial Ex. 14 (accompanying letter). LaToya also testified that she had been diagnosed with hallucinations, panic attacks, schizophrenia, and bipolar disorder. Reporter's R. Vol. III at 156. Following this testimony, the prosecutor referred to her story as "fantastical." Reporter's R. Vol. IV at 16. The prosecutor's argument is supported by the evidence in the record. Accordingly, McDavid's vouching claim is meritless.

6.    The trial court did not err by admitting extraneous-offense testimony.

Last, McDavid argues that the trial court abused its discretion by allowing the State to: impact and attack the credibility of the State's own witnesses, and use agreed redacted statements and jury instructions to disregard the Coban video.

Pet. 8 (ECF No. 1); Mem. 21-23 (ECF No. 3); Reply 2 (ECF No. 26). McDavid contends that the trial court's error violated his right to a fair trial and due process of the law under the Fifth Amendment. Mem. 21 (ECF No. 3).

In support of this argument, McDavid cites to the following: Reporter's R. Vol. III at 73-74, 82-83, 173-75. Pet. 8 (ECF No. 1). It is not clear what testimony McDavid objects to on pages 73 and 74 of volume three, but the record reflects that the jury was not present at that time. *See* Reporter's R. Vol. III at 73-74. With pages 82 and 83, the State appears to have played a portion of the audio that was objectionable. *Id.* 82-83. Hudson's objection to the audio was sustained, and the trial court directed the jury to "disregard the last statement." *Id.* 83. On pages 173 through 175, the prosecutor argued that LaToya McDavid opened the door to discussing McDavid's prior criminal history when she commented that McDavid would not commit an assault. *Id.* 173 ("He wouldn't do nothing like that."). Hudson objected, and the prosecutor proceeded to ask LaToya whether she told police "that your husband was in the middle of a batter's [sic] intervention program and anger management for assaulting you previously[.]" *Id.* 174-75. LaToya responded that she did not remember. *Id.* 175.

The only passage cited by McDavid that specifically refers to an extraneous offense involves McDavid's involvement in a batterer's treatment program. With this admission, LaToya opened the door for admission of this information. When a witness at trial presents a picture that the defendant is not the type of person to

commit the charged offense, the prosecution may impeach that witness's testimony by cross-examining the witness concerning similar extraneous offenses. *Lopez v. Stephens*, 2016 WL 3526085, at *12 (N.D. Tex. Apr. 21, 2016), *recomm. adopted Lopez v. Davis*, 2016 WL 3440476 (N.D. Tex. June 22, 2016); *see also Sandoval v. State*, 409 S.W.3d 259, 303 (Tex. App. – Austin 2013) (citing *Wheeler* v. State, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002) (en banc)). In addition, the jury charge included an instruction on extraneous offenses, and it advised the jury that it could not "consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts." Trial Ct. Clerk's R. 41. Therefore, to the extent the trial court erroneously admitted evidence of an extraneous offense at trial, it cured that error by giving a limiting instruction. *See Gongora v. Thaler*, 710 F.3d 267, 278 (5th Cir. 2013) (explaining a court should consider the effect of any cautionary or curative instruction given to jury); *see also Zafiro*, 506 U.S. at 540–41 (explaining jurors are presumed to follow their instructions). Consequently, McDavid's claim lacks merit and should be denied.

## Recommendation

The Court should deny McDavid's claims and dismiss his § 2254 petition with prejudice.

Signed October 15, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).